**\*NOT FOR PUBLICATON\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GLORIA RAMIREZ,

            Plaintiff,

   v.

CITY OF TRENTON, *et al*.

            Defendants.

Civil Action No. 21-cv-10283 (FLW)

**OPINION**

**<u>WOLFSON, Chief Judge:</u>**

    Plaintiff, Gloria Ramirez ("Ramirez" or "Plaintiff"), a resident of Trenton, New Jersey, filed the instant suit arising out of injuries she sustained during the arrest of her son at her home. In Plaintiff's Amended Complaint, the following individuals are named in their individual and official capacities: Tara Dzurkoc; Detective Anthony Pompeo; Detective Jeremy Stewart; Detective Barry Volkert; Sheilah Coley; John Does 1-10; and John Does 11-20.[1] (ECF No. 4.) Presently before the Court is a motion by Defendants Detectives Anthony Pompeo and Barry Volkert[2] (collectively the "Moving Defendants") to dismiss the claims asserted against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Moving Defendants'

---

[1] According to Plaintiff's Amended Complaint, John Does 1-10 are members of the City of Trenton Police Department and/or the New Jersey State Police and/or the Mercer County Sheriff's Department and/or the New Jersey State Parole Board and/or the U.S. Marshal's New York/New Jersey Regional Fugitive Task Force. (ECF No. 4, p. 1.) John Does 11-20 are members of the same entities in supervisory capacities. (*Id*. at 2.)

[2] According to Plaintiff's Amended Complaint, Detective Anthony Pompeo is a member of the New Jersey State Police. Detective Barry Volkert is a member of the New Jersey State Parole Board. (ECF No. 4, p. 1.) Detectives Pompeo and Volkert are also described as members of the U.S. Marshal's New York/New Jersey Regional Task Force. (*Id*.) These individual defendants are sued in their individual, as well as official, capacities.

1

Motion to Dismiss ("Defs.' Mot.").)  Plaintiff opposes the motion. (Plaintiff's Opposition to Moving Defendants' Motion to Dismiss ("Pl.'s Opp'n.").)  Having considered the parties' submissions, and for the following reasons, the Moving Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court assumes the facts set forth in the Amended Complaint to be true for the purposes of the present motion. On January 7, 2020, defendants Tara Dzurkoc, Anthony Pompeo, Jeremy Stewart, Barry Volkert, and/or John Does 1-10 arrived at Ms. Ramirez's house to arrest her son as part of a U.S. Marshal's New York/New Jersey Regional Fugitive Task Force (NY/NJ RFTF) operation. (ECF No. 4, p. 4.)  After removing Plaintiff's son from the residence, the officers allegedly began to assault Plaintiff's daughter. (*Id*.)  Thereafter, Ms. Ramirez began recording defendant officers with her cell phone. (*Id*. at p. 5.)  Upon seeing Plaintiff recording, defendants Dzurkoc, Pompeo, Stewart, Volkert, and/or John Does 1-10, collectively, allegedly "proceeded to punch and kick Plaintiff numerous times." (*Id*.)  As alleged, Defendant Dzurkoc punched Plaintiff several times with a closed fist in her face, knocking out her two front teeth. (*Id*.)  In addition to losing her upper teeth, Plaintiff allegedly suffered various other injuries to her head, neck and back, as well as her right leg as a result of defendants' actions. (*Id*.)  Plaintiff was charged with aggravated assault on a law enforcement officer, resisting arrest, and obstructing the administration of laws, but the charges were resolved and eventually dismissed following Plaintiff's acceptance into a Pretrial Intervention Program without a plea. (*Id*.)

On April 27, 2021, Plaintiff initially filed a complaint against Sheilah Coley, Tara Dzurkoc, and the City of Trenton. (ECF No. 1.)  On May 11, 2021, Plaintiff filed an Amended Complaint, adding Moving Defendants, Jeremy Stewart, and John Does 1-20. (ECF No. 4.)  In Plaintiff's

Amended Complaint, she brings claims under 42 U.S.C. §1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 413 U.S. 388 (1971), for excessive force (Counts I and II); failure to intervene (Counts III and IV); First Amendment retaliation (Counts V and VI); fabrication of evidence (Counts VII and VIII); failure to supervise (Counts IX and X); and inadequate training (Count XI).  Further, Plaintiff maintains that Moving Defendants violated the New Jersey Civil Rights Act ("NJCRA") by using excessive force and failing to intervene in the use of such force (Count XII) and committed common law state torts against her (Counts XIII and XIV).  Specifically, Plaintiff alleges that Moving Defendants committed assault and battery on, and were negligent in their treatment of, Plaintiff.

In the instant matter, Moving Defendants seek to dismiss these claims.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *Haney v. USA Gymnastics, Inc.*, No. 21-07213, 2022 WL 909871, at *2 (D.N.J. Mar. 29, 2022).  When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

III. DISCUSSION

A. Federal Actors

Plaintiff brings claims for excessive force; failure to intervene; First Amendment retaliation; fabrication of evidence; failure to supervise; and inadequate training under section 1983 and *Bivens*, as well as claims under the NJCRA and New Jersey common law. Moving Defendants argue that they are State actors as they are employees of the New Jersey State Police and the New Jersey State Parole Board, respectively. (*See* Defs.' Mot., pp. 3-4; Pompeo Reply, p. 3.) Plaintiff alleges that Moving Defendants acted at all times as agents, servants and/or employees of the State of New Jersey and/or the U.S. Marshal's New York/New Jersey Regional Fugitive Task Force ("NY/NJ RFTF"). (ECF No. 4, pp. 2-3.) More importantly, Plaintiff avers that on January 7, 2020, Moving Defendants arrived at Plaintiff's home to arrest her son as part of a U.S. Marshal's NY/NJ RFTF operation. (*Id*. at p. 4.) The Court has not identified a single case permitting both section 1983 and *Bivens* claims against the same defendants acting as part of a federal task force operation during an isolated incident. Rather, the District of New Jersey has classified deputized U.S. Marshals employed by state agencies as federal actors. *See Martin v.*

4

*Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 512, n. 2 (D.N.J. 2013). *Martin* involved a suit brought by relatives of an arrestee who died from a gunshot wound within minutes of deputized United States Marshals' arrival at his residence. In *Martin*, the court referred to a category of defendants as "Federal Defendants" or "Marshals" because they had been deputized as members of the NY/NJ RFTF even though none of the defendants was a USMS employee. *Id*. Indeed, two of the defendants were employed by the New Jersey State Police. *Id*. The District of New Jersey explained that "although they each worked for state and local law enforcement agencies, [the Marshals] are to be considered federal agents acting under federal law during the incident in question." *Id*. at 537. The Third Circuit affirmed the district court's opinion. *See Est. of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239 (3d Cir. 2016).

Other courts have also treated state law enforcement officers designated as federal task force members as federal agents acting under federal law. *See, e.g.*, *Guerrero v. Scarazzini*, 274 F. App'x 11, 12 n.1 (2d Cir. 2008) (holding that local officers "assigned to an FBI Joint Organized Crime and Drug Enforcement Task Force" were "federally deputized for their Task Force work," and thus the claim was "properly brought" as a *Bivens* action); *Majors v. City of Clarksville*, 113 F. App'x 659, 659-60 (6th Cir. 2004) (construing section 1983 claim against "police officers who were acting as deputized Task Force Agents by the [DEA]" as a *Bivens* claim "in reality"); *Texas v. Kleinert*, 143 F. Supp. 3d 551, 562 (W.D. Tex. 2015) ("Courts have consistently treated local law-enforcement agents deputized as federal agents and acting as part of a federal task force as federal agents."); *Pike v. United States*, 868 F. Supp. 2d 667, 670, 677–678 (M.D. Tenn. 2012) (concluding that § 1983 claims against "state and local law enforcement officers who served as members of the Fugitive Task Force . . . [of] a program coordinated by the United States Marshal's [*sic*] Service" were "plainly *Bivens* claims, not § 1983 claims"); *Ivey v. Lyman*, No. 902CV470,

5

2005 WL 1397134, at *2 (N.D.N.Y. June 1, 2005) ("[D]efendant is employed by the Albany Police Department, and thus would generally be acting under color of state law in his capacity as a police officer. However, because he was working with the DEA and assigned to the DETF, he is considered to be acting as a federal agent."); *cf. Challenger v. Bassolino*, No. 18-1524, 2019 WL 625803, at *3 (D.N.J. Feb. 14, 2019) (finding that claims against member of the United States Marshal's Office would not be brought under section 1983, but pursuant to *Bivens*).

Consequently, based on Plaintiff's allegation that Moving Defendants were carrying out a NY/NJ RFTF operation on the day of the alleged assault, and precedent construing federal task force members as federal actors, I find that for the purposes of Plaintiff's claims, Moving Defendants were federal actors, acting under color of federal authority, not under the color of state law as state actors. Therefore, Plaintiff's federal claims against Moving Defendants must be brought under *Bivens*, not section 1983.[3] *See Ruiz v. Fed. Bureau of Prisons,* 481 F. App'x 738, 739 n.1 (3d Cir. 2012) (finding plaintiff's suit proper under *Bivens*, not section 1983, because it was against federal actors, not state actors).

Similarly, because the NJCRA, like section 1983, permits a cause of action against "a person acting under color of [state] law," N.J. Stat. Ann. § 10:6-2(c), Plaintiff's NJCRA claims cannot proceed against alleged federal agents acting under the color of federal law. *See Niblack v. New Jersey State Parole Bd.*, No. 17-1977, 2017 WL 2106128, at *2 (D.N.J. May 15, 2017)

---

[3] Because I find that Plaintiff's federal claims must be brought under *Bivens*, not section 1983, I need not address Moving Defendants' argument that they are not "persons" amenable to suit under section 1983. Moreover, Moving Defendant's argument that the Eleventh Amendment bars Plaintiff's action is also moot, as Eleventh Amendment immunity attaches to state officials sued for damages in their official capacity. *See Whaley v. Schiliro*, 644 F. App'x 185, 188 (3d Cir. 2016) ("The Eleventh Amendment of the United States Constitution bars claims under Section 1983 against state actors unless the state has waived its sovereign immunity.").

6

("NJCRA [] enable[s] a plaintiff to bring a civil action only against a 'person' who causes a deprivation of federal and state constitutional rights under the color of state law."). Accordingly, Plaintiff's section 1983 and NJCRA claims are dismissed.

      **B.**     ***Bivens***

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, the Supreme Court recognized a private cause of action to recover damages against federal actors for constitutional violations. 403 U.S. 388, 396-98 (1971). *Bivens* actions are the federal counterpart to section 1983 claims brought against state officials. *See Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip Morris, Inc.,* 250 F.3d 789, 800 (3d Cir. 2001)). Because the parties agree that Moving Defendants are not implicated in the failure to supervise and inadequate training claims, the Court addresses the remaining *Bivens* claims, *i.e.*, excessive force; failure to intervene; First Amendment retaliation; fabrication of evidence.

At the outset, Moving Defendants argue that Plaintiff's *Bivens* claims should be dismissed to the extent they are sued in their official capacity. (*See* Pompeo Reply, p. 4.) Defendant Pompeo relies on the Tenth Circuit's decision in *Farmer v. Perril* to support his argument that *Bivens* suits cannot be maintained against a federal officer in his official capacity. *See Farmer v. Perrill*, 275 F. 3d 958, 963 (10th Cir. 2001) ("There is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity."). The law in the Third Circuit is no different. *See Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) ("An action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."); *see also Webb v. Desan*, 250 F. App'x 468, 470-71 (3d Cir. 2007) (affirming the dismissal of a *Bivens* claim against the United States, BOP, and seven named individuals in their official capacity). Hence, to the

extent Plaintiff brings *Bivens* claims against Moving Defendants in their official capacity, they are dismissed with prejudice.

However, in the instant matter, Plaintiff has also sued Moving Defendants in their individual capacity.  It is well-established that a *Bivens* claim may be asserted against a defendant in his or her individual capacity.  *See Lewal*, 289 F. App'x at 516 (federal employees may be sued under *Bivens* in their individual capacities, subject to the qualified immunity defense); *Debrew v. Auman,* 354 Fed. App'x 639, 641 (3d Cir. 2009) (same); *Balice v. United States*, No. 17-13601, 2018 WL 3727384, at *4 (D.N.J. Aug. 6, 2018) ("*Bivens* claims can only be brought against federal agents who have–in their *individual capacity*–allegedly violated the Constitution.").  Therefore, Plaintiff may maintain her *Bivens* claims against Moving Defendants in their individual capacity.

To state a claim under *Bivens*, a claimant must show (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006). Here, Plaintiff alleges that she may recover under *Bivens* because Moving Defendants violated her First Amendment, Fourth Amendment, and Fourteenth Amendment rights while acting under color of federal law.  Moving Defendants argue that Plaintiff has failed to allege any facts to properly state a claim.  (Defs.' Mot., p. 6.) For the reasons explained below, I find that Plaintiff has sufficiently pled a *Bivens* cause of action with respect to excessive force.  However, Plaintiff has failed to state a claim for failure to intervene, First Amendment retaliation, or fabrication of evidence.

### i. *Excessive Force*

As an initial matter, Moving Defendants argue that Plaintiff has not alleged personal involvement sufficient to subject them to suit.  "[A] party may establish liability for deprivation

8

of a constitutional right only through a showing of personal involvement by each defendant." *Farrar v. McNesby*, 639 F. App'x 903, 906-07 (3d Cir. 2016) (citation omitted). "Personal involvement may be shown through personal direction, actual participation in the alleged misconduct, or knowledge of and acquiescence in the alleged misconduct." *Id.*; *see also Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015). In this case, Plaintiff has adequately alleged personal involvement through allegations of actual participation. Although Moving Defendants argue that the Amended Complaint does not indicate how Detectives Pompeo or Volkert had any personal involvement in this matter, Moving Defendants' individual conduct is clearly described in the Amended Complaint. (*See* ECF No. 4, pp. 4-5 ("On 1/7/20, Defendants . . . Anthony Pompeo . . . [and] Barry Volkert . . . arrived at Plaintiff's home to arrest her son . . . . Seeing Plaintiff recording them, Defendants . . . Anthony Pompeo . . . [and] Barry Volkert . . . proceeded to use excessive and unreasonable force on Plaintiff's person . . . . Defendants . . . Anthony Pompeo . . . [and] Barry Volkert . . . also punched and kicked Plaintiff numerous times.")) Thus, I reject Moving Defendants' argument that they had no personal involvement.

Excessive force claims arising in the context of an arrest are analyzed under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' of a person occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citation omitted). The "reasonableness" inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397 (citations omitted). The "reasonableness" of a particular use of force must be judged "from the perspective of a reasonable officer on the scene, rather than

9

with the 20/20 vision of hindsight." *Bletz v. Corrie*, 974 F.3d 306, 309 (3d Cir. 2020) (quoting *Graham,* 490 U.S. at 396–97). "[F]actors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Jefferson v. Lias*, 21 F.4th 74, 79 (3d Cir. 2021) (citing *Graham,* 490 U.S. at 396). Other relevant factors include "the physical injury to the plaintiff, 'the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (citations and quotations omitted).

Assuming Ms. Ramirez's allegations to be true, as I must at this stage of the proceeding, I find that she has alleged an excessive force claim against Moving Defendants. Here, the allegations clearly demonstrate that a seizure occurred, and Plaintiff has also sufficiently alleged that the force used against her was unreasonable under the circumstances. Plaintiff, a petite woman measuring under five feet in height, avers that upon seeing her record an assault on her daughter with her cell phone, Moving Defendants "punched and kicked [her] numerous times," causing her injuries to her head, neck, back, and right leg. (ECF No. 4, p. 5.) Plaintiff also describes a sequence of events in which the target of defendants' task force operation, Plaintiff's son, had already been successfully removed from the residence, leaving behind Plaintiff and her daughter alongside at least five law enforcement officers in Plaintiff's home. (*Id*. at pp. 4-5.) While Plaintiff was charged with aggravated assault on a law enforcement officer and resisting arrest, it is unclear from

10

Plaintiff's Amended Complaint whether she resisted arrest.[4] Moreover, the allegations do not suggest that Plaintiff posed a threat to Moving Defendants' safety or the safety of other officers present, and there is no indication that Plaintiff was armed. Importantly, even where a plaintiff resists arrest, "[she] does not invite the use of unconstitutional force simply because [s]he is engaged in unlawful activity." *Veneziale v. Deichman*, No. 14-6015, 2018 WL 3122066, at *7 (D.N.J. June 25, 2018). Indeed, even if a plaintiff engages in unlawful conduct, *e.g.*, resisting arrest, during her arrest, that plaintiff does not automatically forfeit the right to challenge police conduct when effectuating the arrest. *Id*. Numerous courts have recognized that the gratuitous use of force is unconstitutional. *See, e.g., Green v. New Jersey State Police*, 246 F. App'x 158, 163 (3d Cir. 2007) (holding it clearly established that choking, hitting on the head and kicking an arrestee after he or she is restrained on the ground constitute forms of excessive force); *Noble v. City of Camden*, 112 F. Supp. 3d 208, 228-29 (D.N.J. 2015) ("At the time Defendants acted, the law was clear that beating an unarmed suspect who was not resisting arrest violates the Fourth Amendment's prohibition against excessive force."); *see also Morrison v. Bd. of Trustees of Green*

---

[4] Plaintiff resolved her claims through the Pretrial Intervention Program and, as a result, there may be a question of whether the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), bars subsequent civil claims. In *Heck*, the Supreme Court held that "to recover damages for allegedly unconstitutional conviction or imprisonment . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254" to circumvent preclusion. *Id.* at 486-87. "Although *Heck* involved a [section] 1983 action by a state prisoner, the reasoning in *Heck* has been applied to bar *Bivens* claims." *See Lora-Pena v. F.B.I.*, 529 F.3d 503, 505, n. 2 (3d Cir. 2008) (citation omitted). Because a pre-trial diversion/intervention program is considered an unfavorable termination, *Heck* preclusion may apply to Plaintiff's claims. *See Gilles v. Davis*, 427 F.3d 197, 208-10 (3d Cir. 2005). However, the parties have not addressed the issue and there are insufficient facts in the Amended Complaint to determine whether Plaintiff's claims are subject to the *Heck* bar at this stage. Nevertheless, the Court notes that this may be an issue for a future phase of the litigation. *See Reaves v. Pennsylvania Bd. of Prob. & Parole*, 580 F. App'x 49, 54 (3d Cir. 2014) ("We need not reach the operation of *Heck*, which is not a jurisdictional rule and may be bypassed.").

*Twp.*, 583 F.3d 394, 404 (6th Cir. 2009) ("This Court has consistently held in light of the reasonableness standard that 'use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law.'") (citation omitted); *Wade v. Colaner*, No. 06-3715, 2010 WL 1490590, *7-10 (D.N.J. April 13, 2010) (officer's use of blunt force to plaintiff's head and pepper spray after the plaintiff already had been partially restrained was unreasonable and thus could be found to be excessive); *Marshall v. Keansburg Borough,* No. 13-533, 2013 WL 6095475, at *7 (D.N.J. Nov. 20, 2013) ("[N]o reasonable office[r] in the Defendant Officers' positions would have believed that [] throwing Plaintiff into their police vehicle, kicking Plaintiff's legs out from him, tackling Plaintiff to the ground, kneeing Plaintiff in his ribs and back, and choking Plaintiff was a lawful, reasonable amount of force to use under the circumstances.")  Here, assuming Plaintiff's allegations to be true that she was punched and kicked numerous times by at least five law enforcement officers, the inference can be made that even had Plaintiff resisted arrest, the force used on her person by law enforcement officers was unreasonable and unnecessary to effectuate her arrest.  Thus, I find that Plaintiff's excessive force claim under *Bivens* is permitted to proceed.

### ii.  Failure to Intervene

In addition to inflicting excessive force on Plaintiff's person, Plaintiff alleges that Moving Defendants did nothing to intervene in the execution of such force. (ECF No. 4, pp. 7-9.) "Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002); *see also Boudreau v. Smith*, No. 17-589, 2018 WL 4426010, at *6 (D. Conn. Sept. 17, 2018) (exercising jurisdiction under *Bivens* over plaintiff's Fourth Amendment claim alleging federal officers' failure to intervene when state officers used excessive force in making arrest at a pool

hall). Under these circumstances, a law enforcement officer may be held liable under *Bivens* where "the officer (1) knows of and acquiesces to (2) the unconstitutional treatment of another in his presence, and (3) fails or refuses to intervene despite having a realistic and reasonable opportunity to intervene." *See Callaway v. Small*, No. 21-12058, 2021 WL 6062281, at *6 (D.N.J. Dec. 22, 2021) (citations omitted); *El*, 975 F.3d at 335 (citing *Smith*, 293 F.3d 641, at 650–51); *Damiani v. Duffy*, 277 F. Supp. 3d 692, 706 (D. Del. 2017), *aff'd*, 754 F. App'x 142 (3d Cir. 2018) (same). The duration of the incident is critical to determining whether there was a reasonable opportunity to intervene. A reasonable opportunity may present itself where the alleged excessive force lasts several minutes, or the event unfolds in multiple stages. *See, e.g.*, *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193-94 (3d Cir. 1995) (finding a genuine issue of fact where the alleged excessive force lasted approximately fifteen minutes); *Smith*, 293 F.3d at 644, 650 (plaintiff's testimony that he was "rammed ... into walls[,] . . . knocked . . . to the floor[,] . . . kicked and punched[,] . . pulled . . . to his feet," and further beaten created a dispute of material fact (internal quotation marks omitted)). Conversely, where an incident is momentary, its "brevity" may "defeat[ ] [a] . . . failure-to-intervene claim." *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018) (no failure-to-intervene claim against a prison lieutenant where a guard allegedly made very brief sexual contact with an inmate); *El*, 975 F.3d at 335 (finding no reasonable jury could find realistic and reasonable opportunity to intervene where incident lasted five seconds).

Here, Plaintiff alleges that Moving Defendants had a reasonable opportunity to intervene in the arrest and purported physical assault of Plaintiff by other non-moving defendants, as well as each other, but failed to do so. (ECF No. 4, pp. 8-9.) However, Plaintiff alleges no facts concerning the temporal length of the alleged assault sufficient to permit the Court to assess Moving Defendants' opportunity to intervene. To the contrary, it appears that, as alleged, the

13

individual officers all participated in the assault of Plaintiff during the same transaction. What is more, because Moving Defendants are alleged to have participated in the unconstitutional actions, it is unlikely that Plaintiff may be able to assert a failure to intervene claim against defendants Pompeo or Volkert. *See Mazur v. Twp. of Marlboro*, No. 16-05527, 2020 WL 373343, at *5 (D.N.J. Jan. 23, 2020) ("Because it is undisputed that [defendant] punched [plaintiff], and that punch is the basis of the failure to intervene claim, [plaintiff] cannot assert such claim against [defendant]."); *Degroat v. Felsman*, No. 16-01186, 2019 WL 652345, at *4 (M.D. Pa. Feb. 15, 2019) (finding that defendants could not be liable where undisputed evidence showed direct involvement in the use of force); *Flint v. City of Milwaukee*, 91 F. Supp. 3d 1032, 1063 (E.D. Wis. 2015) ("[Defendant] is not liable for failing to intervene. This result obtains because he directly participated in the [alleged wrongs] and thus is personally liable for his own actions. An officer cannot intervene in his own constitutional violation."); *Cuellar v. Love*, No. 11-3632, 2014 WL 1486458, at *8 (S.D.N.Y. Apr. 11, 2014) ("Of course, where the officer is a direct participant in the allegedly excessive use of force, the failure to intervene theory of liability is inapplicable."). Accordingly, Plaintiff's failure to intervene claim is dismissed without prejudice. If, during discovery, Plaintiff discovers additional evidence to support a sequence of events in which Moving Defendants did not directly participate in the same violation as the remaining defendants, she may move before the Magistrate Judge to amend these claims.

### iii. First Amendment Retaliation

Plaintiff also brings a First Amendment retaliation claim under *Bivens*. Specifically, Plaintiff alleges that Moving Defendants retaliated against her in violation of the First Amendment by exerting physical force on her person and arresting her after she recorded an encounter between the officers and her daughter in her home. (ECF No. 4, pp. 10-11.) In *Bivens*, the Supreme Court

implied a private right of action under the Fourth Amendment. 403 U.S. at 389. Since *Bivens*, the Supreme Court extended the *Bivens* remedy twice more under the Fifth Amendment's due process clause, *Davis v. Passman*, 442 U.S. 228 (1979), and the Eighth Amendment's prohibition against cruel and unusual punishment, *Carlson v. Green*, 446 U.S. 14 (1980).

However, the Supreme Court has never implied a *Bivens* action under any clause of the First Amendment.[5] *See Reichle v. Howards*, 566 U.S. 658, 663 n. 4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). Further, the Third Circuit more recently refused to extend *Bivens* to a First Amendment retaliation claim brought against an agent of the Transportation Safety Administration. *Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017). Moreover, several courts have declined to extend *Bivens* to First Amendment claims in the prison context after *Vanderklok*. *See e.g.*, *Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel*, 723 F. App'x 137, 139-40, 140 n. 3 (3d Cir. 2018) (dismissing First Amendment retaliation claim brought by federal prisoner against correctional staff and observing that "a First Amendment retaliation claim . . . may not apply to a *Bivens* claim against a federal official"); *Alexander v. Ortiz*, No. 15-6981, 2018 WL 1399302, *1 (D.N.J. Mar. 20, 2018) (refusing to extend *Bivens* to federal prisoner's suit against supervisor for discrimination and retaliation); *Railey v. Ebbert*, 407 F. Supp. 3d 510, 521 (M.D. Pa. 2019) (concluding that prisoner was not entitled to *Bivens* remedy for First Amendment retaliation claims).

Importantly, the Court has not identified a single case extending *Bivens* to a First Amendment retaliation claim in the right to record context. Additionally, it is compelling that the

---

[5] However, the Court notes that the Supreme Court has "assumed without deciding that *Bivens* extends to First Amendment claims." *Wood v. Moss*, 572 U.S. 744, 756 (2014) (finding Secret Service agents were entitled to qualified immunity on viewpoint discrimination claim); *see also Iqbal*, 556 U.S. at 675 ("[W]e assume, without deciding, that respondent's First Amendment claim is actionable under *Bivens*.").

Third Circuit has refused to extend *Bivens* to First Amendment retaliation claims in the TSA and prison contexts, and the Supreme Court has counseled against creating new *Bivens* causes of action.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (explaining that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity") (citing *Iqbal*, 556 U.S. at 675). Notwithstanding, this Court has not identified any precedent prohibiting First Amendment retaliation claims in this context, but more importantly, the parties have not briefed this issue in their papers.  Therefore, it is not prudent for the Court to conduct its own analysis as to whether *Bivens* should extend to this context without the benefit of any arguments from the parties.  At this time, given recent Third Circuit precedent refusing to extend *Bivens* to First Amendment retaliation claims in the national security and prison contexts, and the Supreme Court's skepticism of extending *Bivens* in a new context, Plaintiff's First Amendment retaliation claim is dismissed without prejudice.  Should Plaintiff believe that there is a sufficient basis to support extending *Bivens* to a First Amendment retaliation claim, she may file a motion to amend her complaint.

### iv.  Fabrication of Evidence

Finally, Plaintiff alleges in Count VIII that Moving Defendants fabricated evidence against her by "prepar[ing] false reports and/or [giving] false statements" in violation of her due process rights under the Fourteenth Amendment.  (ECF No. 4, pp. 11-12.)  However, "[t]he Fourteenth Amendment only applies to actions of the states and not to the federal government."  *Brown*, 250 F.3d at 789; *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).  Consequently, it is unsurprising that the Supreme Court has never extended *Bivens* to the Fourteenth Amendment.  *See Berk v. Hollingsworth*, No. 170091, 2020 WL 6867216, at *5 (D.N.J. Nov. 23, 2020) (finding it inappropriate to extend a *Bivens* remedy to a Fourteenth Amendment claim); *Kent v. Tabafunda*, No. 07-4973, 2008 WL 2510723, at *1, n. 4 (D.N.J. June 19, 2008) (recognizing that although

Plaintiff filed a *Bivens*-like complaint pursuant to the Fourteenth Amendment, the Fourteenth Amendment is not applicable to the facts of the case because defendants are federal, not state actors). As a result, Plaintiff's fabrication of evidence claim under the Fourteenth Amendment is dismissed.[6]

### B. Common Law Tort Claims

Plaintiff also alleges that Moving Defendant committed assault and battery against her, and negligently exposed Plaintiff to unreasonable risk of injury. (Pl.'s Opp'n., p. 3.) Because Moving Defendants were acting in the capacity of federal officers at the time of Plaintiff's arrest, the Federal Tort Claims Act ("FTCA") governs. "The United States can generally be substituted for federal employees facing liability for state law tort claims when they 'are sued for damages for harms caused in the course of their employment.'" *Vanderklok*, 868 F. 3d at 201 (quoting *Hui v. Castaneda*, 559 U.S. 799, 801 (2010)). "Once the United States substitutes itself for an individual defendant, the district courts only have jurisdiction to hear those claims if the United States has explicitly waived its sovereign immunity." *Id.* "If it has, then it can be held liable under the FTCA for the acts or omissions of federal employees, but only if it would otherwise be liable under 'the

---

[6] Because the Court has determined that Moving Defendants were acting under the color of federal law on the date of Plaintiff's alleged assault, Plaintiff may be able to bring her fabrication of evidence claim under the Fifth Amendment. *See Cadmus v. United States,* No. 08-1273, 2009 WL 1532059, *5 (M.D. Pa. June 1, 2009) (finding that since Plaintiff was suing federal officials in *Bivens* action, the Fifth Amendment, rather than the Fourteenth Amendment, applied to his claims). Indeed, as noted *supra*, the Supreme Court has extended *Bivens* to the Fifth Amendment in the context of gender discrimination claims. *Davis*, 442 U.S. at 228 (holding that administrative assistant fired by Congressman had a *Bivens* remedy for her Fifth Amendment gender discrimination claim). Although the Supreme Court has not extended *Bivens* to violations of all Fifth Amendment rights, at least one court has recognized a *Bivens* action for fabrication of evidence. *See Webb v. United States*, 789 F.3d 647, 667-70 (6th Cir. 2015) (finding summary judgment of arrestee's *Bivens* fabrication of evidence claim not warranted). As such, Plaintiff may move to amend to re-assert a Fifth Amendment claim under *Bivens*; however, the Court does not comment upon the viability or futility of such a claim.

17

law of *respondeat superior* of the state in which the act or omission occurred.'" *Id*. (quoting *Lomando v. United States*, 667 F.3d 363, 373 (3d Cir. 2011)).

When the United States is sued in tort, the FTCA provides the exclusive avenue to relief. *See* 28 U.S.C. § 2679(b)(1) ("The remedy against the United States provided by sections 1346(b) and 2672 of this title . . . is exclusive of any other civil action or proceeding for money damages[.]"). Relevant here, Plaintiff may seek traditional tort damages, as afforded under 28 U.S.C. § 1346(b), against the United States. *Vanderklok*, 868 F.3d at 201. Section 1346(b) provides that the district courts "shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . caused by the negligent or wrongful act or omission of any employee of the [g]overnment while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b). That section further provides that the government is liable for such damages "under circumstances where [it], if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission or occured." *Id.* However, there are exceptions contained within § 2680 that preclude the application of § 1346(b) to certain tort claims. One exception is the disclaimer of liability for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). That is known as the "intentional tort exception." *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (quotation omitted).

While it appears that the "intentional tort exception" may apply to bar Plaintiff's assault and battery claims, *see* 28 U.S.C. § 2680(h), because Moving Defendants are alleged to have acted as federal law enforcement officers during Plaintiff's arrest, the so-called "law enforcement proviso" provides an exception to the exception; that is, a plaintiff may sue the United States "with

18

regard to acts or omissions of investigative or law enforcement officers of the United States Government," for any claim arising "out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." *Millbrook*, 569 U.S. at 54; *Vanderklok*, 868 F.3d at 202-03. Accordingly, as a matter of law, Plaintiff may pursue her common law negligence, assault and battery claims against the United States.

That being said, however, a party must exhaust certain administrative remedies prior to bringing suit under the FTCA. Specifically, a plaintiff must first present the claim to the appropriate federal agency within two years after its accrual and receive a final denial in writing before proceeding in the district court. 28 U.S.C § 2401(b); 28 U.S.C. § 2675(a). A claim is deemed presented when the federal agency receives written notification of the alleged tortious incident and injuries accompanied by the claim for money damages in a sum certain. 28 U.S.C. § 2675(b); *see also* 28 C.F.R § 14.2; *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 457 (3d Cir. 2010). Exhaustion occurs when either the agency denies the claim or six months have passed without a written denial of the claim. 28 U.S.C. § 2675(a).

"Because the [FTCA] constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed." *Livera v. First Nat'l State Bank of N.J.*, 879 F.2d 1186, 1194 (3d Cir. 1989). Thus, the FTCA's administrative exhaustion requirements are clear and mandatory. *Wilson v. City of Cherry Hill*, No. 10-3866, 2011 WL 3651274, at *4 (D.N.J. Aug. 18, 2011). Furthermore, because the exhaustion requirement is a condition of the United States' waiver of sovereign immunity, it is jurisdictional and cannot be waived. *See White-Squire*, 592 F.3d at 457 (relying on *Bialowas v. United States,* 443 F.2d 1047, 1049 (3d Cir.1971)); *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015).

In the present case, there is no question that Plaintiff did not complete the required administrative procedures before filing the amended complaint on May 11, 2021. Accordingly, Plaintiff's common-law tort claims against the federal defendants are dismissed.[7]

IV.         CONCLUSION

For the foregoing reasons, Moving Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. All counts are dismissed with prejudice to the extent they are brought against Moving Defendants in their official capacity. Counts I (§1983 Excessive Force), III (§1983 Failure to Intervene), V (§1983 First Amendment retaliation), VII (§1983 Fabrication of Evidence), VIII (*Bivens* Fourteenth Amendment Fabrication of Evidence), and XII (NJCRA) are dismissed. Counts IV (*Bivens* Failure to Intervene), VI (*Bivens* First Amendment retaliation), XIII (Assault and Battery), and XIV (Negligence) are dismissed without prejudice. Moving Defendants' motion to dismiss is denied with respect to Count II (*Bivens* Excessive Force). An appropriate Order shall follow.

**DATED**: April 29, 2022

                                                                         /s/ Freda L. Wolfson
                                                                         Hon. Freda L. Wolfson
                                                                         U.S. Chief District Judge

---

[7] The District of New Jersey has, however, permitted a plaintiff to amend a complaint after subsequently exhausting administrative remedies where FTCA claims were not raised in initial filings. *See, e.g.*, *Gillie v. Esposito*, No. 14-3704, 2018 WL 6499864, at *4 (D.N.J. Dec. 11, 2018) ("Plaintiff's FTCA administrative remedies were complete by the time he filed his motion to amend . . . to add an FTCA cause of action. The Court therefore has jurisdiction over the FTCA complaint."). Here, Plaintiff may choose to follow the procedures as required under the FTCA and move to amend her complaint in the event she can show that she has exhausted her administrative remedies. The Court makes no comment as to the timeliness of such a filing, however, and more than two years have passed since the underlying incident. (ECF No. 4, p. 4.)